IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DENISE STRONG, as Personal Representative of the Estate of MARY J. STRONG, deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No.:  2:24-cv-00105-TFM-B **JURY TRIAL REQUESTED** |
| DALLAS COUNTY COMMISION, an entity; MICHAEL L. GRANTHUM, as Sheriff of Dallas County, Alabama, an individual; VIVIAN HUNTER, an individual; TRACY DAVIS, an individual; BEVERLY HUFFMAN, an individual; ELIZABETH "LIBBY" DANIELS, an individual; and LAKIMBRELL MARSHALL, CRNP, an individual, *et al*., | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

COMES NOW, DENISE STRONG, as Personal Representative of the Estate of MARY J. STRONG, deceased, plaintiff, by and through her undersigned counsel of record, and files this Complaint.

## C O M P L A I N T

COMES NOW, DENISE STRONG, as Personal Representative of the Estate of MARY J. STRONG, deceased, plaintiff, with her claims against the Defendants, as follows:

## PARTIES /VENUE

1.   Plaintiff, DENISE STRONG, as Personal Representative of the Estate of MARY J. STRONG, deceased, is over the age of nineteen (19) years old and resides in Selma, Alabama.

2.   Defendant, DALLAS COUNTY COMMISSION, is a governmental entity, with its headquarters in Dallas County Alabama, who, upon information, operates, manages, provides funding for, and controls the Dallas County Jail by and through the Dallas County Sheriff's Department, its Sheriff, its Warden, and its employees, be they employees or contract workers.

3.   Defendant, SHERIFF MICHAEL L. GRANTHUM, is Sheriff of Dallas County, Alabama, and as Sheriff has managerial, operational and controlling duties over the Dallas County Jail along with the DALLAS COUNTY COMMISION, and its employees, be they employees or contract workers.  Claims against Defendant Sheriff

2

Michael L. Granthum are brought in his individual capacity

4.     Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS, upon information, all had the opportunity to ensure that MARY J. STRONG receive proper and timely medical care, but knowingly, purposely, deliberately and consciously failed to provide access, accommodation, transfer to or scheduling of necessary medical care for MARY J. STRONG, and instead, participated, willingly, in the Defendants' scheme to release MARY J. STRONG to her family rather than meet their statutory duty to provide medical care to MARY J. STRONG.

5.     Defendant LAKIMBRELL MARSHALL, CRNP provided medical services to Mary J. Strong while she was incarcerated at the Dallas County Jail. Defendant LaKimbrell Marshall, CRNP, however, acted with deliberate indifference and/or was objectively unreasonable. She failed to intervene, provide and/or ensure, through proper transfer, timely scheduling or oversight to see that MARY J. STRONG, as her patient, received timely and appropriate treatment, and thus, her failure to act and omissions proximately caused the death of MARY J. STRONG.

**JURISDICTION:**

6.  This action arises under the Fourteenth Amendment to the United States Constitution and under federal law, including 28 U.S.C § 2201, 42 U.S.C. §§ 1983 and 1988.

7.  This Court has original jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.  Venue is proper in the Southern District of Alabama because the injuries complained of occurred within this district consistent with 28 U.S.C. § 1391.

**STATEMENT OF FACTS COMMON TO ALL CLAIMS AND COUNTS**

9.  On or about June 24, 2021, Mary J. Strong (hereinafter "Mary" or "Mary J. Strong") was incarcerated into the Dallas County Jail, and she was held on a bond that totaled approximately $1.5 million dollars. Mary was charged with a number of drug related offenses. Mary was incarcerated for well over a year at the Dallas County Jail as a "pre-trial detainee" from approximately June 24, 2021 until April

1, 2022.

10.    Defendants' failures stretch from the time of incarceration until the time of death of MARY J. STRONG, but particular emphasis is placed on the months of February, March and April 2022, wherein MARY J. STRONG had signs and symptoms of pneumonia, infection, and/or serious illness, yet Defendants, with deliberate indifference, conscious disregard and/or being objectively unreasonable, ignored MARY J. STRONG's medical needs, and in turn, caused her death.

11.    On April 1, 2022, Mary was released on a self-recognizance bond. VIVIAN HUNTER, an employee of the Dallas County Sheriff's department signed the bond request indicating that Strong was to be released for medical reasons. The bond request gave no information about the medical reasons. Strong's bond of $1.5 million was reduced to a self-recognizance bond, and Strong was simply released because the Sheriff's office stated that she was due to be released for medical reasons.

12.    On this same day, however, Defendant LAKIMBRELL MARSHALL, CRNP wrote an order for Mary J. Strong to be transferred to Baptist Montgomery Emergency Room, and she noted that the priority was

5

"urgent."

13.    Defendants, however, did not transfer Mary J. Strong to Baptist Montgomery Emergency Room and instead, lowered the bond value from seven figures to zero, and released her to her family, without any medication, treatment plan, or medical advice in a purposeful effort to avoid any financial responsibility for the medical care of Mary J. Strong.

14.    As Mary J. Strong's condition worsened, prior to her release on April 1, 2022, the Defendants did purposely conspire and scheme to develop and implement a plan to release Mary J. Strong rather than provide for her health and safety by providing necessary medical care.

15.    The decisions by the Defendants were made out of self-benefit, were purely financial, were made in an effort to cover their failures in providing timely, appropriate and necessary medical treatment to Mary J. Strong, prior to her release.  Further, the decisions were made with deliberate indifference, conscious disregard and/or objectively unreasonable.

16.    It is the Defendants' deliberate indifference, conscious disregard and/or objective unreasonableness to the medical needs of Mary J.

6

Strong, one of two females incarcerated at the Dallas County Jail during this time, on multiple days and months during her incineration or detention, and during her entire incarceration or detention that allowed the conditions for pneumonia and infection to fester and continue, so that when she was released on April 1, 2022, she was at the point where she could not be saved, which was further exacerbated by the Defendants failure to offer immediate, medially ordered, and necessary medical treatment.

17. Moreover, Mary J. Strong's suffering was no mystery to the Defendants. The Strong family was told by another inmate that Mary was being released because she was not eating, she was not using the bathroom, she could not walk, had difficulty breathing, and overall, was in poor condition.

18. The Strong family, however, was not contacted by the jail prior to Mary's release to inform them of Mary's medical condition. They were not advised of any necessary medications, immediate need for medical care, or follow-up appointments.

19. Further, neither Mary J. Strong, nor her family, were provided any medical treatment release plan from the jail, although the jail was

7

ordered to send Mary J. Strong to Baptist Montgomery on the same day as her release. Defendants knew that if she was sent to Baptist Montgomery and admitted, they would be financially obligated to pay for this care. Instead, they released her in an attempt to avoid responsibility for the medical needs of Mary J. Strong. The law, however, does not condone, approve, or accept this egregious and callous behavior. Mary J. Strong was extremely sick and ill, while in the care of the Defendants. To release her without any further medical treatment or medical plan is ultimately an *ultra vires* act[1], especially when there is sufficient knowledge and facts demonstrating the severity of the illness experienced by Mary J. Strong at the time. She was not stable or her condition was not controlled. Her situation was the exact opposite, where she was fighting an infection that was septic. Her own medical records demonstrate that she had been fighting a tooth infection for months, and that jail staff (not a nurse) was assigned to provide medications to Mary J. Strong, which is a violation of the nurse practice act, and practicing medicine without a license, and further, the staff did fail to administer the medications

---

[1] Law enforcement and a governmental agency conspired to avoid compliance with State and Federal law.

properly.  As a result, Mary J. Strong did miss approximately 25 doses of antibiotic medication in December 2021 and January 2022.

20.    In February and March, Mary J. Strong's condition did not improve, and neither jail staff nor LaKimbrell Marshall, CRNP provided adequate medical care to Mary J. Strong during this time, thus, they continued to consciously disregard, were deliberately indifferent to, and were objectively unreasonable with the medical care needs of Mary J. Strong.

21.    On or about April 2, 2022, after release from the Dallas County Jail, the Strong family called an ambulance because Mary's condition had worsened.  Again, they were not provided information about Mary's serious medical needs at the time of discharge on April 1, 2022, despite the jail personnel being well aware and capable of relaying such information.

22.    The ambulance first took Mary to Vaughan Regional Medical Center in Selma and then to Baptist Princeton Hospital in Birmingham.  Both facilities found Mary to be suffering from sepsis.

23.    By the morning of April 5, 2022, Mary died of septic shock.

24.    The Dallas County jail failed to do a proper medical intake when

Strong was admitted to the jail and ignored obvious signs of her medical condition until it was too late. If Strong had received proper medical care and attention at the Dallas County Jail, including, but not limited to proper, timely, and complete antibiotic therapy, then Mary would have likely survived.

25. The Dallas County jail staff knew that Mary had a serious medical condition or set of medical conditions and chose to request she be released to family rather than transport her to the emergency room or otherwise provide proper and timely medical care and treatment. Defendants ignored the medical needs of Mary and the medical order of Lakimbrell Marshall, CRNP, and thus, exercised deliberate indifference, conscious disregard, and/or were objectively unreasonable to the medical needs of Mary.

26. Moreover, Sheriff Michael L. Granthum has been the Dallas County Sheriff since 2019. Granthum, in a meeting before the Dallas County Commission in 2019, requested more funding for the medical budget at the Dallas County Jail.

27. Granthum stated to the Dallas County Commission, "[a]s the budget ran [last year] we only had $140,000 allowed for medical," said

10

Granthum. "Why that number was in there, I have no idea, because we've had medical bills before where one inmate required $250,000-$300,000."

28.   At all material times, Defendant Michael L. Granthum was, and still is, the Sheriff for Dallas County, and as such, had responsibility for the creation of correctional policies, as well as the housing, safety, and medical treatment of inmates in the Dallas County jail. Defendant Grantham has a statutory duty under Alabama law to attend to the medical needs of inmates in Dallas County's custody.

29.   The Dallas County Commission by law is charged with properly funding the Dallas County jail, especially their medical operations.

30.   The Defendants, however, went in the opposite direction.   The Defendants at one time, prior to the incarceration or detention of Mary Strong, had Dr. Glenton Davis as a paid medical doctor on staff to provide care at the Dallas County Jail, but they did not renew his contract in October 2019.  Dr. Davis had voiced concerns over being able to afford malpractice insurance for the amount he was being paid to serve the jail population.   Defendants did nothing to solve this issue, and as a result, they no longer had a doctor serving the jail

11

population during the time period Mary J. Strong was incarcerated or detained.

31.    Sometime thereafter, Defendants Dallas County Commission and Sheriff Michael L. Granthum began a relationship with a War on Poverty era rural healthcare clinic, *to wit*, Rural Health Medical Program, Inc., to provide medical services to the jail population. Rather than provide proper medical care to the jail population, Defendants relied on health services from a federally supported organization that was established to provide care to the underserved. Thus, by failing to address the medical needs of the Dallas County Jail, properly, through the private sector or through their own properly trained and licensed employees, the Defendants relied on the services of a publicly organized and/or supported rural health clinic.  By doing so, these Defendants usurped the resources of this organization that was supported and funded by the federal government to provide medical services to the general underserved population of the community, not to serve jail populations.

32.    The Defendants failed to have any doctor or nurse on staff at the jail.

33.    Instead, the Defendants had a certified registered nurse practitioner

12

(CRNP) serve on an as needed or contractual basis.

34.    This relationship with rural health and the CRNP is evidence that the Defendants were doing anything possible to avoid the provision of adequate and proper medical care in an effort to reduce their cost exposure.   This invariably and inevitably led to the provision of sub-standard medical care being provided to those in the custody of the Dallas County Jail.  For example, Mary J. Strong provided the Defendants with notice that she suffered from a tumor within the first thirty (30) days of custody on or about July 15, 2021.  At no time did the Defendants request the services of an oncologist, or even better, Defendants did not release Mary on a signature bond at that time. Instead, they kept her in their "care," and with deliberate indifference, conscious disregard, and/or in an objectively unreasonable manner, they failed to provide the medical care that Mary J. Strong needed, thus, allowing her condition to worsen and fester in their custody, until she was at the point of severe medical emergency, yet they released her, rather than arrange for her to receive necessary and emergency medical treatment or medical transport, as ordered by Lakimbrell Marshall, CRNP.  Instead, in an effort to favor their own pocket-book

over the well-being, health and life of Mary J. Strong, they discharged her home without any bridge medical treatment, medical plan, prescriptions or medical advice.[2]

35.  More generally, Defendants, have established deliberately-indifferent and objectively unreasonable customs or policies concerning inmate medical care, including but not limited to (1) a custom or policy of delaying or denying medical treatment to prisoners because they were non-county inmates; a (2) custom or policy of delaying or denying necessary medical treatment to avoid liability for prisoner medical bills; and (3) a custom or policy of releasing pre-trial detainees in attempt to avoid their statutory responsibility to provide for their medical care pursuant to Ala. Code 1975 § 14-16-19.

36.  The Dallas County Sheriff's Department has a history of releasing inmates due to rising medical costs. James Herrod was held in the Dallas County jail on a $1 million dollar bond for a murder charge. Herrod was released three months later when his attorney requested a

---

[2]  At the root of Defendants suppression of what they knew to be a serious medical condition affecting Mary J. Strong was the hope that no family member would understand the gravity of the harm committed by the Defendants by keeping Mary in their care since the time they were first alerted of her tumor on or about July 15, 2021, and further, after they had knowledge of her infection, but failed to administer necessary medications or provide timely, correct, and necessary treatment.

14

medical bond based on need for chemotherapy treatment. The Sheriff at the time, Harris Huffman Jr., stated ""My concern is he is extremely ill, and to be in a county jail and being that sick, it's really hard to give him the medical attention that he needs,""It's expensive, and it's taxpayers' money. … I think with him being this sick after several months it was time to do something else."

37.    The Dallas County jail has a history of delaying medical treatment of prisoners. In one case an inmate alleged that he lost vision in his eye to such delayed treatment of a diabetic eye condition. *Best v. Huffman, et. al., CV 17-00042-CG-N.*

38.    Any jail staff, medical staff, or correctional officers should know that pneumonia requires immediate medical attention  The most common form of sepsis is community-acquired pneumonia. Furthermore, with Mary being 60 years old, the jail staff should have known that Mary was susceptible to pneumonia and/or sepsis because of her age and that failure to timely and properly treat her medical conditions would probably lead to her death.  Purposely failing to adequately or timely provide medical treatment and/or transfer to a hospital is *prima facie* deliberate   indifference,   conscious   disregard   and/or   objective

15

unreasonableness of the life and/or well-being of Mary. Further, upon information, Defendants had a policy and/or a financial reason to deliberately and consciously deny medical care to Mary, and thus, employed a common scheme used by these Defendants wherein they merely "release" the prisoner in an attempt to circumvent their statutory duty.

39.    The Dallas County Jail has a practice of not giving inmates treatment plans when they are released. At a minimum, they should be provided with medication lists and information regarding follow-up appointments and scheduled medical care. Also, the Dallas County Jail staff should have given care instructions and stressed the emergent nature of the care needs of Mary J. Strong at the time of her release. Their failure to do these things, however, is an admission by omission of either (a) their complete lack of ability or unwillingness to assess the care needs of Mary J. Strong at the level of deliberate indifference, conscious disregard, and/or objective unreasonableness; or (b) an act in furtherance of their conspiracy or scheme to commit ultra vires acts and break the law (as law enforcement and/or a governmental entity) to avoid their statutory duty and constitutional obligations to those in

16

their custody.

40.    Additionally, what happened to Mary J. Strong was part of a systematic plan to avoid paying medical costs.  In other words, the Defendants would fail to provide timely and appropriate medical care and treatment, as a result of its purposeful resistance to adequately fund its "prisoner medical program:" (i) by its shift from a medical doctor providing treatment to those in custody, to relying on a federally funded or organized rural health clinic and/or nurse practitioner to provide care at the jail, and thus, failing to have adequate, competent or sufficient staff; (ii) by failing to have adequate written policies directing when someone should receive further or outside assessment and/or medical treatment; (iii) by failing to  train of jail personnel on how to deal with prisoners or detainees with serious medical needs; (iv) the failure to relay or provide information to family of the serious or grave condition of their loved one; and/or (v) by failing to create a medical plan and failing to provide medications, once a detainee or prisoner is released.

41.    Therefore, the Defendants negligently, willfully, wantonly, and/or with deliberate indifference, conscious disregard and/or in an objectively

17

unreasonable manner provided medical care below the standard of care, failed to provide medical care that met the standard of care, failed to provide correct medical care, failed to provide timely medical care or withheld medical care or treatment, all to the detriment of MARY J. STRONG, and as a result, proximately caused her death.

## COUNT ONE
### *PRIMA FACIE* AND/OR *PER SE* NEGLIGENT CONDUCT
### (Against all Defendant Dallas County Commission)

42.     At the aforesaid time and place and for some time prior thereto, Defendants' care for MARY J. STRONG fell below the applicable standard of care and they negligently and/or wantonly caused the injuries herein with Plaintiff.

43.     As a result of this conduct, Defendant Dallas County Commission violated the Alabama Code (e.g., Ala. Code, 1975 § 14-6-19).

44.     Defendant Dallas County Commission has a duty under the laws of the State of Alabama to provide adequate funding for "necessary medicines and medical attention" to inmates in the county jail pursuant to Ala. Code, 1975 § 14-6-19.

45.     Defendant Dallas County Commission, however, breached its duty to maintain the jail in Dallas County in that it failed to ensure that the statutory and

18

regulatory provisions requiring that "necessary medicines and medical attention" are provided to inmates, such as Mary J. Strong, were met.

46.    Further, Defendant Dallas County Commission breached its duty to provide adequate funding for medical treatment and failed to provide sufficient funds to staff the county jail so that the personnel within the jail were able to provide "necessary medicines and medical attention" to inmates.  This failure caused, *inter alia*, Mary J. Strong to remain in the Dallas County Jail for too long without proper and timely medical attention. This failure, also, caused the Defendants to repeatedly fail to address her medical needs and release her with a serious medical condition, without proper and timely treatment, putting her at risk of serious harm and death, which ultimately came to her within four days from her sudden release from the Dallas County Jail on April 1, 2022.

47.    Moreover, Defendant Dallas County Commission, also, violated MARY J. STRONG's Fifth Amendment, Eighth Amendment, and § 1983 Fourteenth Amendment Rights as a pre-trial detainee by failing to fund medical care, failing to hire a jail physician, failing to hire a jail nurse, and failing to provide adequate funding for jail staff to meet the medical needs of pre-trial detainees, such as MARY J. STRONG.

19

48.    Said conduct was the proximate cause of Plaintiff's decedent's death, and is *prima facia* and/or *per se* negligence by the Defendant Dallas County Commission.

WHEREFORE, Plaintiff demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate Plaintiff for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

## COUNT TWO
## VIOLATION OF CONSTITUTIONAL RIGHTS - DELIBERATE INDIFFERENCE AND/OR OBJECTIVELY UNREASONABLE
## (Against all Defendant Sheriff Michael L. Granthum, in his individual capacity)

49.    Plaintiff incorporates herein by reference the allegations contained in the preceding paragraphs.

50.    Upon information and belief, Defendant Michael L. Granthum violated MARY J. STRONG's Fifth Amendment right to due process, Eighth Amendment right to not be subject to cruel and unusual punishment, and § 1983 Fourteenth Amendment Rights as a pre-trial detainee.

51.    Defendant Michael L. Granthum acted with deliberate indifference

20

toward the serious medical needs of MARY J. STRONG while a prisoner at DALLAS COUNTY JAIL. This includes not providing timely and appropriate treatment or transfer to a medical facility to treat her pneumonia, infection, and to save her life.

52.    Further, upon information and belief, Defendant Michael L. Granthum failed to properly staff, adequately hire, train, manage, supervise, and/or instruct the Jail staff, including, but not limited to VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS,  giving rise to the wrongful death of Mary J. Strong. Granthum's failures, including, but not limited to, the improper release of Mary J. Strong (*e.g.*, she was not sent to a medical facility upon release on April 1, 2022) constituted an unconstitutional custom or practice.

53.    Also, upon information and belief, Defendant Michael L. Granthum failed to operate the Dallas County Jail in accordance with whatever Rules, policies or procedures the Jail maintains, but rather, allowed, permitted, and/or tolerated the Dallas County Jail staff, including, but not limited to VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS, to disregard the Rules, policies and procedures in certain critical areas, and allowed, permitted and/or tolerated the actual custom and practice of operating

21

and managing the Dallas County Jail in these areas to differ from and violate the Rules, policies and procedures. In so acting, Defendant Michael L. Granthum thereby caused the Dallas County Jail to be operated in a manner inconsistent with, and in violation of, the Fourteenth Amendment to the United States Constitution, the Eighth Amendment to the United States Constitution and the Fifth Amendment to the United States Constitution.

54.    Defendant Michael L. Granthum has supervisory responsibility for the Dallas County Jail. He personally participated in the unconstitutional conduct alleged herein and is further connected to such conduct. Upon information and belief, he was aware of the history of wide-spread abuse and was on notice of the need to correct the alleged deprivation concerning Mary J. Strong, yet failed to do so. Alternatively, it was Defendant Michael L. Granthum's customs or policies that resulted in the deliberate indifference to Mary J. Strong's Constitutional rights. Alternatively, Defendant Michael L. Granthum directed the Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS and/or other Jail staff to act unlawfully, or knew that they would act unlawfully and failed to stop them from doing so.

55.    Defendant Michael L. Granthum knew, or should have known, that failing to timely and appropriately treat pneumonia and MARY's other medical

symptoms probably caused MARY J. STRONG to die, yet with deliberate indifference, conscious disregard and/or being objectively unreasonable, he failed to direct anyone or caused the failure to provide the medical treatment needed by Mary to save her life.

56.    Defendant Michael L. Granthum knew, or should have known, that his deliberate indifference, conscious disregard and/or being objectively unreasonable to MARY J. STRONG's medical needs would pose a substantial risk of serious harm to her physical well-being.

57.    Defendant Michael L. Granthum violated MARY J. STRONG's Fifth Amendment, Eighth Amendment, and § 1983 Fourteenth Amendment Rights as a pre-trial detainee by failing to timely and appropriately treat pneumonia, infection, and MARY's other medical symptoms.

58.    Defendant Michael L. Granthum, also, violated MARY J. STRONG's Fifth Amendment, Eighth Amendment and § 1983 Fourteenth Amendment Rights as a pre-trial detainee by failing to provide adequate and necessary medical treatment during her time of incarceration at the Dallas County Jail.

59.    Defendant Michael L. Granthum, also, violated MARY J. STRONG's Fifth Amendment, Eighth Amendment, and § 1983 Fourteenth Amendment Rights as a pre-trial detainee by failing to fund medical care, failing to hire a jail

23

physician, failing to hire a jail nurse, and failing to provide adequate funding for jail staff to meet the medical needs of pre-trial detainees, such as MARY J. STRONG.

60.    Defendant Michael L. Granthum, also, violated MARY J. STRONG's Fifth Amendment, Eighth Amendment, and § 1983 Fourteenth Amendment Rights as a pre-trial detainee by failing to follow the order of the CRNP to send MARY J. STRONG to Baptist Montgomery on April 1, 2022.

61.    Additionally, Defendant Michael L. Granthum violated MARY J. STRONG's Fifth Amendment, Eighth Amendment, and § 1983 Fourteenth Amendment Rights as a pre-trial detainee by failing to provide any post discharge prescriptions, medical care, medical advice, schedule medical treatment, provide emergency medical services, or medical plan on or about April 1, 2022 or thereafter.

62.    By keeping MARY J. STRONG as a pre-trial detainee on or after July 15, 2021, when she gave notice of a ten month tumor.  MARY J. STRONG was not discharged for "medical reasons" at this time.  Also, she was not provided any oncology treatment or any other treatment for this tumor until arguably on or about March 25, 2022, when an order for a surgical consult was issued by the CRNP. There, however, is no evidence that this consult occurred.  Instead, the CRNP

wrote another order for a CT scan on March 30, 2022, after MARY J. STRONG requested an ambulance. The CT scan occurs the next day at Vaughan Regional Medical Center. The CRNP then orders MARY J. STRONG to be transferred to Baptist Montgomery Emergency Room due to an "abnormal" CT scan, and the priority was "urgent." The jail staff, however, fails to follow this order (or a previous order concerning the surgical consult) and instead discharges MARY J. STRONG to her family without any further medical plan, advice, instructions, prescriptions or treatment. The keeping of MARY J. STRONG as a pre-trial detainee with a 10 month tumor, without any further medical treatment or assessment of the tumor until on or about March 25, 2022 or March 30, 2022, failure to follow medical orders, and discharging her to family rather than provide emergency treatment to MARY J. STRONG violated MARY J. STRONG's Fifth Amendment, Eighth Amendment, and § 1983 Fourteenth Amendment Rights as a pre-trial detainee.

63.    Defendant Michael L. Granthum is responsible for the unconstitutional customs and policies described herein. The suffering and injury to MARY J. STRONG was a direct and foreseeable result of these customs and policies. Defendant Micahel L. Granthum deprived MARY J. STRONG of her rights as a prisoner/pre-trial detainee under the Fifth, Eighth, and Fourteenth

25

Amendment.

64.    Defendant Michael L. Granthum knew of and disregarded the excessive risk to the health and safety of MARY J. STRONG, in violation of her constitutional rights, due to the knowledge, training and expertise of these medical professionals and their understanding of pneumonia and infection, as well as their patient, MARY J. STRONG.  Defendant Michael L. Granthum knew that there was a risk of substantial serious harm to MARY J. STRONG when they acted as they did, with deliberate indifference, conscious disregard and/or objectively unreasonable, to her medical needs and medical care.  Further, Defendant Michael L. Granthum consciously chose or allowed an easier and less efficacious treatment plan with a disregard to the health and safety of MARY J. STRONG.  Moreover, Defendant Michael L. Granthum did not correct their course of treatment, or request that it be corrected, after it was known that said course was detrimental to the health and safety of MARY J. STRONG.

WHEREFORE, Plaintiff demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate Plaintiff for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

**COUNT THREE**
**VIOLATION OF CONSTITUTIONAL RIGHTS - DELIBERATE**
**INDIFFERENCE AND/OR OBJECTIVELY UNREASONABLE**
**(Against Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY**
**HUFFMAN, and ELIZABETH "LIBBY" DANIELS, both individually and in**
**their official capacity)**

65.    Upon information and belief, Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS violated MARY J. STRONG's Fifth Amendment right to due process, Eighth Amendment right to not be subject to cruel and unusual punishment, and § 1983 Fourteenth Amendment Rights as a pre-trial detainee.

66.    Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS  acted with deliberate indifference toward the serious medical needs of MARY J. STRONG while a prisoner at DALLAS COUNTY JAIL.  This includes not providing timely and appropriate treatment or transfer to a medical facility to treat her pneumonia, infection, and to save her life.

67.    Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS knew, or should have known, that failing to timely and appropriately treat pneumonia and MARY's other medical symptoms probably caused MARY J. STRONG to die, yet with deliberate indifference, conscious disregard and/or being objectively unreasonable, they

27

failed to provide the medical treatment needed by Mary to save her life.

68.    Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS knew, or should have known, that their deliberate indifference, conscious disregard and/or being objectively unreasonable to MARY J. STRONG's medical needs would pose a substantial risk of serious harm to her physical well-being.

69.    Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS violated MARY J. STRONG's Fifth Amendment, Eighth Amendment and § 1983 Fourteenth Amendment Rights as a pre-trial detainee by failing to timely and appropriately treat pneumonia, infection, and MARY's other medical symptoms.

70.    Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS, also, violated MARY J. STRONG's Fifth Amendment, Eighth Amendment and § 1983 Fourteenth Amendment Rights as a pre-trial detainee by failing to provide adequate and necessary medical treatment during her time of incarceration at the Dallas County Jail.

71.    Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS, also, violated MARY J.

STRONG's Fifth Amendment, Eighth Amendment, and § 1983 Fourteenth Amendment Rights as a pre-trial detainee by failing to follow the order of the CRNP to send MARY J. STRONG to Baptist Montgomery on April 1, 2022.

72.    Additionally, Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS violated MARY J. STRONG's Fifth Amendment, Eighth Amendment, and § 1983 Fourteenth Amendment Rights as a pre-trial detainee by failing to provide any post discharge prescriptions, medical care, medical advice, schedule medical treatment, provide emergency medical services, or medical plan on or about April 1, 2022 or thereafter.

73.    By keeping MARY J. STRONG as a pre-trial detainee on or after July 15, 2021, when she gave notice of a ten month tumor.  MARY J. STRONG was not discharged for "medical reasons" at this time.  Also, she was not provided any oncology treatment or any other treatment for this tumor until arguably on or about March 25, 2022, when an order for a surgical consult was issued by the CRNP. There, however, is no evidence that this consult occurred.  Instead, the CRNP wrote another order for a CT scan on March 30, 2022, after MARY J. STRONG requested an ambulance.  The CT scan occurs the next day at Vaughan Regional Medical Center.  The CRNP then orders MARY J. STRONG to be transferred to

Baptist Montgomery Emergency Room due to an "abnormal" CT scan, and the priority was "urgent."   The jail staff, including but not limited to Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS, however, fails to follow this order (or a previous order concerning the surgical consult) and instead discharges  MARY J. STRONG to her family without any further medical plan, advice, instructions, prescriptions or treatment.   The keeping of MARY J. STRONG as a pre-trial detainee with a 10 month tumor, without any further medical treatment or assessment of the tumor until on or about March 25, 2022 or March 30, 2022, failure to follow medical orders, and discharging her to family rather than provide emergency treatment to MARY J. STRONG  violated MARY J. STRONG's Fifth Amendment, Eighth Amendment, and § 1983 Fourteenth Amendment Rights as a pre-trial detainee.

74.    Defendants  VIVIAN  HUNTER,  TRACY  DAVIS,  BEVERLY HUFFMAN,  and  ELIZABETH "LIBBY" DANIELS  are  responsible  for  the unconstitutional customs and policies described herein.  The suffering and injury to MARY  J.  STRONG  was  a  direct  and  foreseeable  result  of  these  customs  and policies.    Defendants  deprived  MARY  J.  STRONG  of  her  rights  as  a prisoner/pre-trial detainee under the Fifth, Eighth, and Fourteenth Amendment.

75.    Defendants  VIVIAN  HUNTER,  TRACY  DAVIS,  BEVERLY

HUFFMAN, and ELIZABETH "LIBBY" DANIELS  knew of and disregarded the excessive risk to the health and safety of MARY J. STRONG, in violation of her constitutional rights, due to the knowledge, training and expertise of these medical professionals and their understanding of pneumonia and infection, as well as their patient, MARY J. STRONG.  Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS knew that there was a risk of substantial serious harm to MARY J. STRONG when they acted as they did, with deliberate indifference, conscious disregard and/or objectively unreasonable, to her medical needs and medical care.  Further, these Defendants, VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS, consciously chose an easier and less efficacious treatment plan with a disregard to the health and safety of MARY J. STRONG.  Moreover, Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS did not correct their course of treatment, or request that it be corrected, after it was known that said course was detrimental to the health and safety of MARY J. STRONG.

76.    Further, the failure of Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS and/or other Jail staff to treat Mary J. Strong was done pursuant to customs, policies,

31

procedures and/or practices of the Sheriff of Dallas County, Alabama, Michael L. Granthum.

77.    As a result of Defendants' VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS deliberate indifference to Mary J. Strong's medical needs, Mary J. Strong ultimately died. Mary J. Strong's condition became critical and then fatal due to Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS deliberate indifference to Mary J. Strong's serious medical condition.

78.    These individual Defendants, VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS, either (a) participated in the pattern of neglect, mistreatment, and abuse of Mary J. Strong described hereinabove, or (b) saw and/or knew of the neglect, mistreatment, and abuse of Mary J. Strong and failed to take reasonable steps to protect her from such neglect, mistreatment, and abuse.

79.    This conduct of Defendants VIVIAN HUNTER, TRACY DAVIS, BEVERLY HUFFMAN, and ELIZABETH "LIBBY" DANIELS was a proximate cause of Mary J. Strong's death.

80.    Defendants    VIVIAN    HUNTER,    TRACY    DAVIS,    BEVERLY

HUFFMAN, and ELIZABETH "LIBBY" DANIELS   conduct was done with malice or reckless indifference to Mary J. Strong's federally protected rights, giving rise to Plaintiff's entitlement to punitive damages.

WHEREFORE, Plaintiff demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate Plaintiff for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

## COUNT FOUR
## VIOLATION OF THE FOURTEENTH AMENDMENT - DELIBERATE INDIFFERENCE AND/OR OBJECTIVELY UNREASONABLE
### (Against Defendant Sheriff Michael L. Granthum, in his individual capacity)

81.    The Dallas County Sheriff, MICHAEL L. GRANTHUM, has established an unconstitutional policy, practice, and/or custom of improperly training, re-training, instructing, supervising, and/or discipline in regard to officers' duty to provide proper medical care, in turn, presenting a substantial risk to inmates' health and safety and a substantial risk of serious bodily harm in violation of inmates' rights under the Substantive Due Process Clause of the

33

Fourteenth Amendment to the United States Constitution.

82.    Due to these policies, practices, and/or customs, acts of misconduct amounting to deliberate indifference to inmates' medical needs and deliberate indifference to substantial risk of bodily injury or death are tolerated by the Sheriff and his deputies.

83.    As such, officers believed they were free to ignore serious medical needs without regard to the rights of detainees at the jail and without any fear of consequences or discipline.

84.    The above-described policies, practices, and customs demonstrate deliberate indifference by the Defendant Sheriff MICHAEL L. GRANTHUM toward the rights of individuals in custody in general, and further, did cause the death of the decedent, MARY J. STRONG.

WHEREFORE, Plaintiff demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate Plaintiff for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding

## COUNT FIVE
## VIOLATION OF CONSTITUTIONAL RIGHTS[3]
## (Against Lakimbrell Marshall, CRNP)

85.    Plaintiff incorporates herein by reference the allegations contained in the preceding paragraphs.

86.    Upon information and belief, Defendant LAKIMBRELL MARSHALL violated MARY J. STRONG's Fifth Amendment right to due process and Eighth Amendment right to not be subject to cruel and unusual punishment, as well as § 1983 Fourteenth Amendment Rights as a pre-trial detainee.

87.    Defendant LAKIMBRELL MARSHALL acted with deliberate indifference, conscious disregard and/or objectively unreasonable toward the serious medical needs of MARY J. STRONG while a pre-trial detainee at the Dallas County Jail.

88.    Defendant LAKIMBRELL MARSHALL knew, or should have known, that failing to properly and timely assesses and treat pneumonia and infection would probably cause MARY J. STRONG serious and permanent injury, yet with deliberate indifference, conscious disregard and/or being objectively unreasonable, she failed to properly and timely assess MARY J. STRONG and

---

[3] Plaintiff brings her claims for constitutional violations pursuant to the holding of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971) against LaKimbrell Marshall, who, upon information, is classified as a federal employee.

address her symptoms or review her medication administration record to determine the best course of action compliant with the standard of care for the health and safety of MARY J. STRONG. Instead, she ignored standard medical conventions and standards of care as they apply to MARY J. STRONG, failed to properly assess her, failed to schedule treatment for her tumor, failed to recommend discharge for her tumor, failed to recommend that only those with proper medical licensure should administer medications, failed to review the medication administration record, failed to timely and properly assess and treat the infection and pneumonia suffered by MARY J. STRONG, and failed to timely order transfer of MARY J. STRONG to an appropriate medical facility to treat her serious illness.

89.    Defendant LAKIMBRELL MARSHALL knew, or should have known, that her deliberate indifference, conscious disregard and/or being objectively unreasonable to MARY J. STRONG's medical needs, would pose a substantial risk of serious harm to her physical well-being.

90.    Nevertheless, she acted in this manner as a display of her incompetence as a medical professional and/or her acting in concert with the scheme or plan of the other Defendants to expend a minimal amount of time and resources on the medical needs of MARY J. STRONG, even if it was sub-standard or placed MARY J. STRONG in risk of serious, imminent or life-threatening injury

36

or death, with the ultimate plan to discharge MARY J. STRONG to her family after the failures in care and treatment were cumulative in nature to the degree to make any possibility of saving her life nearly impossible.

91.    Defendant LAKIMBRELL MARSHALL, CRNP violated MARY J. STRONG's  Fifth Amendment right to due process and Eighth Amendment right to not be subject to cruel and unusual punishment, as well as § 1983 Fourteenth Amendment Rights as a pre-trial detainee by failing to provide medical care and attention to MARY J. STRONG in a timely and within the standard of care as described herein.

92.    Defendant LAKIMBRELL MARSHALL is responsible for the unconstitutional customs and policies described herein.  The suffering and injury to MARY J. STRONG was a direct and foreseeable result of these customs and policies.  Defendant LAKIMBRELL MARSHALL deprived MARY J. STRONG of her rights as a prisoner under the Fifth and Eighth Amendment and her rights as a pre-trial detainee under the Fourteenth Amendment.

93.    Defendant LAKIMBRELL MARSHALL knew of and disregarded the excessive risk to the health and safety of MARY J. STRONG, in violation of her constitutional rights, due to the knowledge, training and expertise of these medical professionals.  Defendant LAKIMBRELL MARSHALL knew that there was a risk

of substantial serious harm to MARY J. STRONG when she acted as they did, with deliberate indifference, conscious disregard and/or objectively unreasonable, to MARY J. STRONG's medical needs and medical care. Further, this Defendant consciously chose an easier and less efficacious treatment plan with a disregard to the health and safety of MARY J. STRONG. Moreover, Defendant did not attempt to correct their course of treatment, or request that it be corrected, after it was known that said course was detrimental to the health and safety of MARY J. STRONG, on or about March 30, 2022. Moreover, Defendant LAKIMBRELL MARSHALL consciously avoided properly and timely assessing MARY J. STRONG, reviewing her chart, or reviewing her drug administration, in order to know that the improper or deprivation of proper medical care was causing her or likely to cause her grave and serious harm.

WHEREFORE, Plaintiff demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate Plaintiff for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

38

**COUNT SIX**
**FAILURE TO PROVIDE NECESSARY MEDICAL ATTENTION**
**(Against all Defendant Dallas County Commission and Defendant Lakimbrell Marshall, CRNP)**

94.    Defendant Dallas County Commission has a duty under Ala. Code 1975 § 14-6-19 to furnish necessary medicines and medical attention to inmates of the Dallas County Jail.

95.    Further, Defendant Lakimbrell Marshall, CRNP has a duty to provide necessary medical attention as a licensed nurse in the State of Alabama assigned to the Dallas County Jail during the time period that Mary J. Strong was a pre-trial detainee

96.    Despite having knowledge that Mary J. Strong was under continual medical and physical decline, she did not receive  proper medical care or attention.

97.    Instead of properly treating Mary J. Strong or making sure that she was timely treated at a hospital or medical facility, the Sheriff and his employees and/or contract employees waited until Strong was beyond the point of where her health could improve with medical treatment to have her released, and even then, they did not transfer or release her to a medical facility, thus, with deliberate indifference and/or conscious disregard, they sealed the fate of MARY J. STRONG

39

to die on April 5, 2024.

98.    Granthum and prior Sheriffs of Dallas County have publicly stated that the jail medical care is underfunded and they cannot provide proper medical care.

99.    However, there is no evidence that funding for medical care has been increased even though it has been requested by the Sheriff.

100.    The Defendant Dallas County Commission and Defendant Lakimbrell Marshall and jail staff violated Alabama law by not providing necessary funding or resources and/or in the case of Lakimbrell Marshall, failing to provide timely and correct medical care and attention to MARY J. STRONG, and in both cases, demonstrating deliberate indifference, conscious disregard and/or objective unreasonableness, and/or in the case of Lakimbrell Marshall, also, demonstrating negligence and/or wantonness.

WHEREFORE, Plaintiff demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate Plaintiff for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

40

## COUNT SEVEN
## MEDICAL NEGLIGENCE AND/OR WANTONNESS
## (Against Lakimbrell Marshall, CRNP)

101.    Defendant Lakimbrell Marshall, CRNP provided medical care wherein MARY J. STRONG was a prisoner and/or pre-trial detainee.

102.    Defendant Lakimbrell Marshall, CRNP knew and/or in the exercise of reasonable care had reason to know that MARY J. STRONG needed to be treated and cared for properly.

103.    Defendant Lakimbrell Marshall, CRNP, however, did not properly treat and care for MARY J. STRONG.

104.    Defendant Lakimbrell Marshall, CRNP had a legal duty to possess and exercise that same degree of care, skill and diligence commonly possessed and exercised by the same or similarly situated nurses, such as CRNP, within the national medical community under the same facts and circumstances as set out above as well as to those requirements established by state and federal law. Defendant Lakimbrell Marshall, CRNP owed the following, but not limited to the following, duties of care to MARY J. STRONG:

   a)    To timely and properly treat and care for MARY J. STRONG;

   b)    To provide employees, staff, and/or medical professionals trained in the proper manner to care for and treat patients;

   c)    To properly monitor the actions of employees, staff, and/or medical

41

professionals;

d)    To employ personnel, staff and/or medical professionals who understand proper procedures to be followed when attempting to give care and assistance to a resident;

e)    To provide adequate staffing, so that MARY J. STRONG receive appropriate care and treatment;

f)    To properly and routinely assess and/or evaluate the needs of MARY J. STRONG and to provide appropriate care and treatment to meet those needs;

g)    To properly assess MARY J. STRONG's needs;

h)    To follow standing orders;

i)    To assess and observe MARY J. STRONG;

j)    To report and investigate physical symptoms and/or problems;

k)    To timely call or notify a doctor;

l)    To timely call 9-1-1;

m)    To timely administer emergency treatment;

n)    To timely seek the services of an ambulance to DIRECTLY transport MARY J. STRONG to a medical facility;

o)    To timely and properly assess MARY J. STRONG and follow-up on the assessment to ensure that MARY J. STRONG is receiving timely and adequate treatment to meet her medical needs;

p)    To provide nurses and/or staff who are properly trained and are competent in administering care and treatment to prisoners, such as MARY J. STRONG, in a proper and timely manner;

42

q)      To properly address physical symptoms and/or problems;

r)      To properly and timely assess MARY J. STRONG; and

s)      To timely and properly treat the signs and symptoms of pneumonia;

t)      To timely and properly treat a patient, such as MARY J. STRONG, who is having difficulty walking, is not eating, is not using the restroom and who is having trouble breathing;

u)      To ensure that MARY J. STRONG is properly hydrated;

v)      To monitor MARY J. STRONG to ensure her conditions are improving and not worsening;

w)      To treat MARY J. STRONG's pneumonia in a timely and appropriate manner;

y)      To monitor MARY J. STRONG;

z)      To timely and properly assess MARY J. STRONG and follow-up on the assessment to ensure that MARY J. STRONG is receiving timely and adequate treatment to meet her medical needs;

aa)     To transfer MARY J. STRONG after July 15, 2021, when Lakimbrell Marshall, CRNP had notice of MARY J. STRONG's tumor and/or failure to refer MARY J. STRONG to an oncologist;

bb)     To administer medications to MARY J. STRONG, including, but not limited to antibiotics, and/or relying on Jail staff to administer medications in violation of the nurse practice act;

cc)     To timely and properly treat MARY J. STRONG's tooth infection and subsequent infections;

dd)     To timely and properly treat MARY J. STRONG's pneumonia;

ee)     To timely and properly treat MARY J. STRONG's symptoms, such as

43

difficulty breathing, inability to walk, not using the bathroom, and not eating;

ff)    To monitor her antibiotic therapy to ensure she was receiving necessary medications;

gg)    To timely assess and monitor the care, symptoms and condition of MARY J. STRONG to determine whether or not she is improving and/or continuing to suffer from infection or other symptom, and thus, if she is still suffering from an ailment to provide the necessary treatment she needs and/or timely or emergently transfer her to a facility that can provide her medical needs.

105.    Defendant Lakimbrell Marshall, CRNP, however, negligently or wantonly, and/or with deliberate indifference, conscious disregard and/or objective unreasonableness breached the standard of care for similarly situated healthcare providers by the following, but not limited to the following, actions or inactions:

a)    Failing to timely and properly treat and care for MARY J. STRONG;

b)    Failing to provide employees, staff, and/or medical professionals trained in the proper manner to care for and treat patients;

c)    Failing to properly monitor the actions of employees, staff, and/or medical professionals;

d)    Failing to employ personnel, staff and/or medical professionals who understand proper procedures to be followed when attempting to give care and assistance to a prisoner;

e)    Failing to provide adequate staffing, so that MARY J. STRONG receive appropriate care and treatment;

f)    Failing to properly and routinely assess and/or evaluate the needs of

44

MARY J. STRONG and to provide appropriate care and treatment to meet those needs;

g)      Failing to properly assess MARY J. STRONG's medical needs;

h)      Failing to timely seek the services of an ambulance to DIRECTLY transport MARY J. STRONG to a medical facility;

i)      Failing to ensure that MARY J. STRONG's medical needs were met, both in a timely and appropriate manner;

j)      Failing to timely and properly assess MARY J. STRONG and follow-up on the assessment to ensure that MARY J. STRONG is receiving timely and adequate treatment to meet her medical needs;

k)      Failing to assess and observe MARY J. STRONG;

l)      Failing to report and investigate physical symptoms and/or problems;

m)      Failing to timely call or notify a doctor;

n)      Failing to timely call 9-1-1;

o)      Failing to timely administer emergency treatment;

p)      Failing to timely assess MARY J. STRONG;

q)      Failing to administer necessary medications, such as antibiotics to MARY J. STRONG;

r)      Failing to provide nurses and/or staff who are properly trained and are competent in administering care and treatment to and assessing prisoners in a proper and timely manner;

s)      Failing to implement policies and procedures and/or train nurses and/or nursing assistants on the proper way to assess, address, care for, treat, and/or administer medications to a prisoner;

45

t)      Failing to implement or follow policies and procedures and/or train nurses and/or nursing staff in providing care and/or assessment to someone such as MARY J. STRONG;

u)      Failing to timely and properly treat a patient, such as MARY J. STRONG, who is having difficulty walking, is not eating, is not using the restroom and who is having trouble breathing;

v)      Failing to provide adequate, timely and medically necessary medical care;

w)      Failing to properly address physical symptoms and/or problems;

x)      Failing to treat MARY J. STRONG's pneumonia in a timely and appropriate manner;

y)      Failing to monitor MARY J. STRONG;

z)      Failing to timely and properly assess MARY J. STRONG and follow-up on the assessment to ensure that MARY J. STRONG is receiving timely and adequate treatment to meet her medical needs;

aa)     Failing to transfer MARY J. STRONG after July 15, 2021, when Lakimbrell Marshall, CRNP had notice of MARY J. STRONG's tumor and/or failure to refer MARY J. STRONG to an oncologist;

bb)     Failing to administer medications to MARY J. STRONG, including, but not limited to antibiotics, and/or relying on Jail staff to administer medications in violation of the nurse practice act;

cc)     Failing to timely and properly treat MARY J. STRONG's tooth infection and subsequent infections;

dd)     Failing to timely and properly treat MARY J. STRONG's pneumonia;

ee)     Failing to timely and properly treat MARY J. STRONG's symptoms, such as difficulty breathing, inability to walk, not using the bathroom, and not eating; and

46

ff)  Failing to monitor her antibiotic therapy to ensure she was receiving necessary medications; and

gg)  Failing to timely assess and monitor the care, symptoms and condition of MARY J. STRONG to determine whether or not she is improving and/or continuing to suffer from infection or other symptom, and thus, if she is still suffering from an ailment to provide the necessary treatment she needs and/or timely or emergently transfer her to a facility that can provide her medical needs.

106.  As a direct result of the above-described negligent or wanton actions. and/or inactions of the Defendant Lakimbrell Marshall, CRNP, Plaintiff's decedent, MARY J. STRONG, was caused to die.

WHEREFORE, Plaintiff demands judgment against defendants, jointly and severally, in a sum of compensatory and/or punitive damages in excess of the jurisdictional limits of this Court, to be determined by a jury, which will fairly and adequately compensate Plaintiff for the damages and injuries she sustained, together with interest from the date of the incident and the costs of the proceeding.

**COUNT EIGHT**
**WRONGFUL DEATH**
**(Against all Defendants)**

107.  This claim is brought pursuant to the Alabama Wrongful Death Act, Alabama Code, Section 6-5-410.

47

108.   As a direct and proximate result of the wrongful act(s), omission(s) and/or negligence of the Defendants, MARY J. STRONG, was caused to die.

WHEREFORE, PREMISES CONSIDERED, Plaintiff claims from Defendants those damages allowable under Alabama law pursuant to the Alabama Wrongful Death Act.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

/s/ Greg W. Foster
GREG W. FOSTER (FOS-024)
One of the Attorneys for the Plaintiff

OF COUNSEL:

FOSTER LAW FIRM, P.C.
4220 Cahaba Heights Court, Suite 206
Birmingham, AL  35243-5733
Tel. (205) 259-1678
Fax  (888) 519-3341
Email:  greg@fosterlawnow.com

Martin E. Weinberg, Esq.
MARTIN EVAN WEINBERG, P.C.
PO Box 154
Shannon, AL  35142-0154

48

/s/ Greg W. Foster
Of Counsel


**PLEASE SERVE THE FOLLOWING DEFENDANTS VIA U.S. CERTIFIED MAIL WITH SUMMONS AND COMPLAINT:**


LAKIMBRELL MARSHALL
℅ John Crear
1107 Vogelin Avenue
Selma, AL  36701

49

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed with the Court on July 17, 2024, using the CM/ECF filing system and that a copy of same will be served upon counsel of record by electronic notification via such electronic filing system:

J. Randall McNeill, Esq.
Donavon McGuire, Esq.
Webb McNeill Walker, PC
One Commerce Street, Suite 700
Post Office Box 238
Montgomery, AL  36101-0238
Tel. (334) 262-1850

<u>/s/ Greg W. Foster</u>
Of Counsel

50